■ Maria T. Gayton, Respondent, v Jessie M. Palmateer et al., Appellants.—Mikoll, J. Appeals (transferred to this court by order of the Appellate Division, Second Department) from a judgment and an amended judgment of the Supreme Court (Patsalos, J.), entered February 24, 1989 and July 24, 1989 in Orange County, upon a verdict rendered in favor of plaintiff.

The sole question presented on these appeals is whether the verdict of the jury awarding plaintiff $184,900 for personal injuries she sustained as a result of the collision of the automobile she was operating with the automobile operated by defendant Robert W. Palmateer (hereinafter Palmateer) and owned by defendant Jessie M. Palmateer, was excessive. We answer in the negative. The judgments should therefore be affirmed.

The accident occurred when Palmateer, in attempting to make a left turn, pulled onto the path of plaintiff's vehicle which was traveling at about 40 to 45 miles per hour on October 8, 1985. Plaintiff, a then 40-year-old woman, testified at trial that although she was wearing a seat belt at impact, her forehead struck the windshield, the upper portion of her body struck the steering wheel and her legs hit the interior of the vehicle. She was stunned and hurt all over. She sustained

wounds over her left eye which were bleeding. She was taken by ambulance to the hospital, treated by her family physician, Dr. James Di Lorenzo, in the emergency room and released. She felt groggy, continued to hurt all over and was bleeding from the right side of the forehead and from both knees. She complained of pain in her ankles. Di Lorenzo prescribed medication for her pain.

Plaintiff, at the time of her accident, was employed at a psychiatric hospital as a licensed practical nurse at $350 per week. Her hospital duties were physically demanding, requiring her to physically restrain patients as needed, lifting patients from wheelchairs or chairs to toilets or beds, diapering some patients and performing other patient-care chores. She was unable to return to work until some three months following the accident. She ceased working at the hospital two months later because of pain and inability to perform her duties. Dr. Sheldon Katz, her treating neurosurgeon, testified that plaintiff was not capable of performing the duties of a psychiatric nurse because of her injuries.

Plaintiff also came under the care of Dr. Frank Maniscalo, a chiropractor, on November 5, 1985 and continued to treat with him regularly thereafter through the time of trial. He diagnosed plaintiff as having sustained a lumbosacral-lumbar strain and a cervical strain with nerve root irritation in the left cervical region. He performed adjustments to her neck and back. During the first six months of this treatment her condition showed some minimal improvement.

It was in June 1987 that plaintiff came under Katz's care and it was he who initially made a clinical diagnosis that she possibly had herniated discs in the neck and lower back. Testing indicated the presence of a herniated disc at L4-L5. Katz testified that tests confirmed his initial diagnosis that plaintiff had herniated discs in the neck and lower back. In relation to the lower back he explained that the tests demonstrated a bulge or herniation of the front of the spinal cord at the L4-L5 level, with a flattening of the thecal sac and compression of the nerve roots. He stated that this condition would be a source of pain, would decrease the ability of the nerves to transmit impulses and would be permanent. Katz also found that plaintiff had a herniated cervical disc at the C5-C6 level flattening the thecal sac and compressing the nerve roots. This caused the spasms in plaintiff's neck as well as her inability to move her head properly. Katz opined that the disc at the C5-C6 level should be corrected surgically. Plaintiff has not yet had this recommended surgery. Plaintiff

was also treated by other medical doctors and a dentist. She testified as to her present physical condition, including her pain and limitation of motion. She also described her expenses and losses resulting from the accident.

Defendants presented the testimony of Dr. Martin Altchek, an orthopedic surgeon who examined plaintiff on one occasion for defendants. He found no objective basis for plaintiff's complaints and was of the opinion that it was unlikely that a disc rupture or herniated disc would occur as a result of an automobile accident. He stated that most disc ruptures go away without doing anything to them.

After the jury awarded plaintiff a verdict in the amount of $184,900, defendants made a motion to set aside the verdict as excessive. This was denied. The judgment and an amended judgment were entered and these appeals ensued.

As the facts above show, this case presented conflicting medical evidence which was presented to the jury and it was the jury's duty to resolve that conflict (see, Erlon v J.H.W. Constr. Corp., 137 AD2d 653). We do not find the verdict in this case to deviate materially from what would be reasonable compensation (see, CPLR 5501 [c]; Arbutina v Bahuleyan, 159 AD2d 973).

Judgment and amended judgment affirmed, with costs. Kane, J. P., Casey, Weiss, Mikoll and Harvey, JJ., concur.